United States District Court
Southern District of Texas
**ENTERED**
December 18, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| DIANE EKEMBE § | |
| § | |
| VS. § | CIVIL ACTION NO. 5:25-cv-225 |
| § | |
| WARDEN ORLANDO PEREZ *et al.* § | |

**ORDER**

Petitioner, a Cameroonian citizen currently in ICE custody, brings this 28 U.S.C. § 2441 Petition challenging her continued detention despite being granted withholding of removal (*see* Dkt. No. 1). Following an exhaustive review of the law and facts, the Court **GRANTS IN PART** the Petition.

## I. BACKGROUND

Before fleeing to the United States, Petitioner Diane Ekembe[1] was a teacher in the Central African country Cameroon (Dkt. Nos. 1-1 at 2, ¶ 6; 19 at 20). There, she faced oppression at the hands of the military and witnessed a separatist sect kill a fellow teacher (Dkt. Nos. 1-1 at 2, ¶ 6; 19 at 20). Fearing for her life, she escaped to the United States and arrived at a southwest port of entry on December 12, 2024 (Dkt. Nos. 1 at 7, ¶ 20; 1-1 at 2, ¶ 6; 19 at 15, 74; 19-1 at 1, ¶ 4). She was apprehended upon her arrival and has been detained since (Dkt. Nos. 1-1 at 2, ¶ 5; 19 at 14).

Initially, Petitioner sought asylum and was deemed ineligible as she entered the United States during an effective suspension and limitation on entry (Dkt. No. 19 at 13, 17). She then underwent a credible fear interview on January 31, 2025 (Dkt. Nos. 19 at

---

[1] Petitioner's true name is "Ekembe Diane Achebi," however, her immigration paperwork and this habeas proceeding misidentified her as Diane Ekembe (Dkt. No. 1-1 at 2, ¶ 1). For that reason, the Court refers to her as Diane Ekembe.

1

14–29; 19-1 at 2, ¶ 6). On May 15, 2025, an Immigration Judge ("IJ") ordered her removed from the United States but simultaneously granted her Withholding of Removal under 8 U.S.C. § 1231(b)(3), finding it more likely than not that Petitioner's life or liberty would be threatened if she returned to Cameroon (Dkt. No. 1-2 at 2). She was denied relief under the Convention Against Torture (Dkt. No. 1-2 at 2). That same day, both Petitioner and DHS waived their right to appeal the IJ's removal order (Dkt. No. 1-2 at 5). Immigration authorities advised her she would be "removed to a third country as [she] could not be sent back to Cameroon" (Dkt. No. 1-1 at 2, ¶ 8).

195 days after her removal order was entered,[2] ICE completed its *first* Post-Order Custody Review of Petitioner's custody status (Dkt. No. 19-1 at 3, ¶¶ 22–23). Without further elaboration, ICE determined Petitioner "would remain in custody because she has a final order of removal[,] and she is pending removal to a third country" (Dkt. No. 1-1 at 3, ¶ 22). She therefore remains detained at the Laredo Processing Center in Laredo under ICE custody (Dkt. Nos. 1 at 5, ¶ 14; 19 at 9).

Petitioner initiated this habeas proceeding on November 18, 2025 (*see* Dkt. No. 1). She filed an *Ex Parte* Motion to Award the Writ or Issue an Order to Show Cause alongside her Petition (Dkt. No. 3). In response, Respondents moved to dismiss the Petition (Dkt. No. 18), and Petitioner filed a timely reply (Dkt. No. 23).

---

[2] According to DHS regulations, a district director is required to conduct a Post-Order Custody Review ("POCR") before the 90-day removal period lapses, if the alien's removal cannot be accomplished during the removal period. 8 C.F.R. § 241.4(k)(1)(i).

Notably, DHS concurrently held Petitioner's 180-day PCOR review on November 26, 2025 (Dkt. No. 19-1 at 3, ¶ 23). 8 C.F.R. § 241.4(k)(2)(ii). It did not offer any insight regarding its failure to timely conduct either review.

## II.   LEGAL STANDARDS

### A. 28 U.S.C. § 2241

Under 28 U.S.C. § 2241(c)(3), a detainee may seek habeas relief if they are "in custody in violation of the Constitution or laws or treaties of the United States." "The petitioner 'bears the burden of proving that [she] is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [her] burden of proof by a preponderance of the evidence.'" *Puertas-Mendoza v. Bondi*, No. SA-25-CV-00890-XR, 2025 WL 3142089, at *1 (W.D. Tex. Oct. 22, 2025) (Rodriguez, J.) (quoting *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025)).

A court entertaining a habeas petition shall immediately "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." § 2243. A court need not hold a hearing if the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989); *see also Gomez-Simeon v. Bondi*, No. SA-25-CV-01460-JKP, 2025 WL 3470872, at *1, *6 (W.D. Tex. Nov. 24, 2025) (Pulliam, J.) (granting habeas petition without a hearing); *Puertas-Mendoza*, 2025 WL 3142089, at *1, *5 (same).

### B. Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move for dismissal of a suit, arguing the court lacks subject matter jurisdiction. "The party asserting jurisdiction 'constantly bears the burden of proof that jurisdiction does in fact exist.'" *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). "The motion should be granted only if it

3

appears certain the plaintiff cannot prove any set of facts that would entitle [them] to recovery." *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

### C. Federal Rule of Civil Procedure 12(b)(6)

Courts have found "that use of Rule 12(b)(6) in [the] habeas context is inconsistent with the habeas rules." *Ndudzi v. Castro*, No. SA-20-CV-0492-JKP, 2020 WL 3317107, at *9 (W.D. Tex. June 18, 2020); *Olya v. Garite*, No. EP-25-CV-00083-DCG, 2025 WL 3254931, at *3 n.32 (W.D. Tex. Oct. 14, 2025). Accordingly, "[a] motion to dismiss for failure to state a claim is an inappropriate practice in habeas." *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (citing *Browder v. Director, Dep't of Corrections of Ill.*, 434 U.S. 257, 269 n.14 (1978)).

### III.    DISCUSSION

In their motion to dismiss, Respondents broadly raise three issues: (1) that Petitioner's prolonged detention is lawful; (2) the separation of powers divests this Court of jurisdiction to review Petitioner's due process claims; and (3) DHS's co-called "March Guidance" passes constitutional muster (*see* Dkt. No. 21). Recognizing its duty to address subject matter jurisdiction at the outset, the Court begins with Respondents' second point. *See Fort Bend County v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 188 (5th Cir. 2023) (citing *Ramming*, 281 F.3d at 161) (generally courts must analyze subject matter jurisdiction before evaluating the merits).

### A. Subject Matter Jurisdiction

Respondents cite two district court opinions, outside the Fifth Circuit, *C.R.L. v. Dickerson*, 4:25-CV-175-DL-AGH, 2025 WL 1800209 (M.D. Ga. June 30, 2025) and *Diaz*

4

*Turcios v. Oddo*, No. 3:25-cv-0083, 2025 WL 1904384 (W.D. Pa. July 10, 2025), purportedly holding that review of third-country removal is inseparable from Petitioner's order of removal (Dkt. No. 18 at 7, ¶ 2). They also offer a virtually bare citation to the nationwide class action *D.V.D. v. Department of Homeland Security*, No. 25-10676, 2025 WL 1142968 (D. Mass. Apr 18, 2025) (Dkt. No. 18 at 7, ¶ 3). In response, Petitioners contend that Section 1252's provisions do not strip the Court of jurisdiction (Dkt. No. 23 at 15–17). The Court agrees.

As Petitioner highlights, she is *not* contesting her removability, but rather her indefinite detention and the means in which ICE effectuated her removal (Dkt. No. 23 at 15). 8 U.S.C. § 1252(g)[3] confers exclusive jurisdiction to the executive branch for three discrete reasons: to commence removal proceedings; to adjudicate cases; and to execute removal orders. Absent from this list are "challenges to the manner in which ICE executes the removal order." *Sagastizado v. Noem (Sagastizado I)*, No. 5:25-CV-00104, 2025 WL 2957003, at *2 (S.D. Tex. Sept. 10, 2025) (Saldaña, J.) (quoting *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d, 137, 152 (W.D.N.Y. May 2, 2025)). Because Petitioner seeks due process review *following* ICE's decision to execute her removal order, § 1252(g) does not bar the Court's jurisdiction.

Similarly, 8 U.S.C. § 1252(a)(5) and (b)(9), statutory provisions concerning judicial review, do not strip the Court's habeas jurisdiction. Indeed, the Fifth Circuit has made clear that "[w]here review of an agency determination involves *neither* a determination as to the validity of [the petitioner's] deportation orders or the review of any question of

---

[3] To be clear, Respondents neglected to cite § 1252 in their briefing (*see* Dkt. No. 18). However, Petitioner bears the burden to satisfy jurisdictional requirements. *Morris*, 852 F.3d at 419 (quoting *Ramming*, 281 F.3d at 161).

law or fact arising from their deportation proceedings, § 1252(a)(5) and (b)(9) should not operate as a bar to the district court's review." *Duarte v. Mayorkas*, 27 F.4th 1044, 1056 (5th Cir. 2022). In other words, if, as here, a petitioner disputes the process due *following* a deportation proceeding, then § 1252(a)(5) and (b)(9) are a non-issue. *Jennings v. Rodriguez*, 583 U.S. 281, 291–93 (2018) (rejecting the view that § 1252(b)(9) applies to bar "prolonged detention" claims); *Mahdejian v. Bradford*, No. 9:25-CV-00191, 2025 WL 2269796, at *3 (E.D. Tex. July 3, 2025); *Sagastizado v. Noem (Sagastizado II)*, --- F. Supp. 3d. ---, No. 5:25-CV-00104, 2025 WL 2957002, at *6 (S.D. Tex. Oct. 2, 2025) (Saldaña, J.); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (noting that habeas remains the "basic method for obtaining review of continued custody after a deportation order ha[s] become final").

Finally, the Court is unpersuaded that Respondents' invocation of *D.V.D.* carries any weight. The Supreme Court stayed that action, and it does not address Petitioner's prolonged detention claims. *See Sagastizado II*, 2025 WL 2957002, at *7–8 (detailed discussion of *D.V.D.*'s impact). Moreover, Respondents did not meaningfully engage with *D.V.D.*, relying solely on a citation to the case. The Court exercises subject matter jurisdiction over Petitioner's indefinite detention claims, and moves to the merits.

### B. Merits of Habeas Petition

Petitioner raises claims: (1) challenging her indefinite detention under the Immigration and Nationality Act ("INA") and the Due Process Clause; and (2) opposing any future third-country removal absent notice and an opportunity to be heard (*see* Dkt. No. 1 at 14–15). For the former, she seeks immediate release (Dkt. Nos. 1 at 16, ¶ d; 23 at 18). As to the latter, she requests the Court order Respondents to notify Petitioner and

her counsel "written notice of third country removal to which Respondents intend to remove her, and confirmation from that third country that it has agreed to accept Ms. Ekembe, at least 10 days before any removal is initiated" (Dkt. No. 1 at 16–17, ¶ f). The Court merges the INA and due process analysis and begins there.

    1. Indefinite Detention and *Zadvydas v. Davis*, 533 U.S. 678 (2001)

Pursuant to the INA, the Government ordinarily secures the removal of an alien during the statutory 90-day period following an order of removal. 8 U.S.C. § 1231(a)(1)(A). As relevant here, the removal period begins to run on "[t]he date the order of removal becomes administratively final." § 1231(a)(1)(B)(i). Aliens are generally detained during the removal period. § 1231(a)(2)(A).

If the alien is not removed during this statutory 90-day period, the Government may continue to detain them for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Reasonableness should be measured "in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699. To aid in this determination, the Supreme Court set a presumptively reasonable six-month period of post-removal detention. *Id.* at 701. Beyond that point, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." *Id.* (citation modified). It is axiomatic, however, that the Constitution forbids an alien's indefinite or permanent post-removal detention. *Id.* at 689.

a. *Presumptively Reasonable Period of Detention*

As a threshold matter, the Court must determine whether Petitioner has been detained for the presumptively reasonable six-month period.[4] Petitioner advances that her removal order became final on the date it was issued, May 15, 2025, because all parties waived appeal (Dkt. Nos. 1 at 7, ¶ 22; 1-2 at 5). Respondents agree with this characterization (Dkt. No. 18 at 4, ¶ 4). Therefore, Petitioner's post-removal detention commenced on May 15, 2025—six months and three days before she filed this Petition (*see* Dkt. No. 1). Up to the date of this Order, Petitioner has been detained seven months and three days.

b. *Petitioner's Burden*

Having found that Petitioner has been detained beyond the presumptively reasonable period, she need only demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 699. Although the Fifth Circuit instructed that an alien's onus extends beyond "conclusory statements," there is no further binding guidance. *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006). At any rate, Petitioner tendered a sworn declaration providing a detailed account of her immigration proceedings, such that the Court finds she satisfied her burden.

First, third-country removals are exceedingly rare. In fiscal year 2017, "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country." *Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (citation omitted). Indeed, aliens with withholding of removal status "typically remain[ ] in the

---

[4] Nothing in this statement should be construed as expressing the Court's view on whether the presumption is rebuttable.

United States for the foreseeable future." *Id.* at 552 (Breyer, J., dissenting). This makes sense, as foreign countries have little incentive to accept aliens with no connections to their country (Dkt. No. 1-1 at 2, ¶ 8 (a deportation officer admitted to Petitioner "it is difficult to find a third country for removal")). *See Puertas-Mendoza v. Bondi*, No. SA-25-CV-00890-XR, 2025 WL 3142089, at *3 (W.D. Tex. Oct. 22, 2025) (Rodriguez, J.) ("[F]oreign governments 'routinely deny' requests to receive people who lack a connection to the would-be receiving country.").

Outside of third-country removals' rarity, ICE did not attempt to effectuate Petitioner's removal *at any point* during the presumptively reasonable six-month span. By their own account, Respondents submitted their first I-241 requests to Costa Rica, Honduras, and Belize on November 19, 2025—the day *after* this habeas petition was filed (*see* Dkt. Nos. 1; 19-1 at 3, ¶ 20). Costa Rica already declined to accept Petitioner, and the requests to Honduras and Belize remain outstanding (Dkt. No. 19 at 3, ¶ 21). Regardless, standing alone, mere pending requests are "insufficient to show that [Petitioner's] removal is likely to occur in the reasonably foreseeable future." *Garcia-Aleman v. Thompson*, No. SA-25-CV-886-OLG (HJB), 2025 WL 3534806, at *5 (W.D. Tex. Nov. 24, 2025), *report and recommendation adopted*, No. SA-25-CV-00886-OLG, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025); *Trejo v. Warden of ERO El Paso E. Mont.*, No. EP-25-CV-401-KC, 2025 WL 2992187, at *5–6 (W.D. Tex. Oct. 24, 2025). That Petitioner has been detained for over six-months, coupled with the absence of any earnest pre-Petition removal efforts, speaks volumes.

Finally, Petitioner is a Cameroonian citizen with no meaningful ties to any other country (Dkt. No. 1-1 at 2, ¶ 3). *See Misirbekov v. Venegas (Misirbekov I)*, 793 F. Supp.

9

3d 892, 895 (S.D. Tex. 2025) (Olvera, J.) (finding a lack of connection to any country besides the alien's country of origin to be significant); *see also Trejo*, 2025 WL 2992187, at *5. Of course, ICE cannot legally return Petitioner to Cameroon. § 1231(b)(3); *cf. Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002) (barriers to repatriation are significant if a petitioner makes the required showing). However, nothing precludes a third country from extraditing her to Cameroon—where she will likely be persecuted. *See Trejo*, 2025 WL 2992187, at *5; *see also Sagastizado II*, 2025 WL 2957002, at *15 (discussing how once an alien is removed, non-refoulment may no longer be feasible). As this District recognized, "[i]t is in the public interest to prevent 'aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm.'" *Misirbekov v. Venegas (Misirbekov III)*, No. 1:25-CV-00168, 2025 WL 2450991, at *2 (S.D. Tex. Aug. 15, 2025) (Olvera, J.) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). This important consideration, taken with Petitioner's other evidence, persuades the Court that Petitioner carried her burden.

c. *Whether the Government Rebutted Petitioner's Showing*

Simply put, the Government's rebuttal efforts do not rise to the occasion. The Government rests on the following unsubstantiated assertion: "There is a significant likelihood of removal in the reasonably foreseeable future as ICE-ERO is actively working with its agency counterparts to secure third-country removal" (Dkt. No. 19-1 at 3, ¶ 24). As discussed above, Respondents' outstanding requests to Honduras and Belize do not suffice to persuade the Court. *Garcia-Aleman*, 2025 WL 3534806, at *5; *Trejo*, 2025 WL 2992187, at *5–6.

What is more, Respondents have not proffered any evidence—let alone even alleged—that Honduras or Belize have *ever* accepted a Cameroonian national deported

10

from the United States. *See Trejo*, 2025 WL 2992187, at \*6. While the Court recognizes that Petitioner has been detained for just over the presumptively reasonable period, Respondents' inaction and imprecision make clear they have not met their burden to rebut Petitioner's showing. Thus, Petitioner's removal is not reasonably foreseeable, and her continued confinement amounts to an unconstitutional, indefinite detention. *See Zadvydas*, 533 U.S. at 696, 699 (finding that neither the INA nor the Constitution authorizes indefinite detention); *see also Misirbekov III*, 2025 WL 2450991, at \*1–2 (detention of alien for six months and sixteen days was unreasonable where alien had no citizenship or ties to another country besides his country of origin and he would face "political persecution, torture, and death" if returned there).

    2. Third-Country Removal

Looking to the future, Petitioner argues that removal to a third country without "notice of the country of intended removal or any opportunity to be heard on a fear-based claim related to that country would violate the Due Process Clause" (Dkt. No. 1 at 16, ¶ 68). Respondents counter the March Guidance, which designates DHS's third-country removal procedures,[5] conforms to constitutional standards (Dkt. No. 18 at 8). **The Court will not resolve this issue, as it is separate and distinct from Petitioner's prolonged detention**.[6] Moreover, at its core, the *D.V.D.* litigation challenges the March

---

[5] According to the Guidance, "[p]rior to the alien's removal to a country that had not previously been designated as the country of removal, DHS must determine whether that country has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." OFF. OF THE SEC'Y, U.S. DEP'T OF HOMELAND SEC., GUIDANCE REGARDING THIRD COUNTRY REMOVALS (Mar. 30, 2025). If the United States receives credible assurances, then the alien can be removed without further process. *Id.* If not, the Guidance imposes additional requirements, including notice and a fear screening. *Id.*

[6] As Petitioner concedes, the March Guidance "protections apply to the removal process only after the government receives confirmation that a third country agrees to accept Ms. Ekembe" (Dkt. No. 23 at 14). Petitioner also underscores that her primary requested relief at this juncture is release

11

Guidance's constitutionality. Accordingly, the Court defers ruling on this claim.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's habeas Petition (*see* Dkt. No. 1) is **GRANTED IN PART**. Petitioner's *Ex Parte* Motion to Award the Writ or Issue an Order to Show Cause alongside her Petition (Dkt. No. 3) is **DENIED AS MOOT**.

Respondents are **ORDERED** to **RELEASE** Petitioner Diane Ekembe from custody to a public place **no later than 5:00 p.m. on December 22, 2025**. Petitioner's release is subject to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

Respondents are **ORDERED** to **NOTIFY** Petitioner's counsel of the exact location and exact time of her release as soon as practicable and **no less than two hours before her release**.

The parties are **ORDERED** to file a Joint Status Report **no later than 5:00 p.m. on December 23, 2025**, confirming that Petitioner has been released and advising the Court of her conditions of release.

The Court's prior **ORDER** that Respondents **NOTIFY** Petitioner's counsel and the Court of any planned removal of her from the United States, at least five (5) days before any such removal, **REMAINS IN PLACE**.

It is so **ORDERED**.

**SIGNED** December 18, 2025.

                                                  Marina Garcia Marmolejo
                                                  United States District Judge

---

(*see* Dkt. No. 23 ("[T]hese additional arguments do not change the calculus that Ms. Ekembe is entitled to release and that the Court should grant her Petition.")).